Please call the next case. 10826401 Robert Goodman v. American Taxi Dispatch Counsel, please. Counsel, may you please the court. My name is Louis Gaines. I represent the plaintiff, Robert Goodman, Jr., who was a cab driver who was shot and robbed. He ended up being paralyzed, confined to a wheelchair. He now lives in Memphis. This was back in 1997. He's getting closer to 40. Married man with one child. The problem with this case happens to involve... Could you keep your voice up, please? Yes, of course. 236B, the rule of evidence that does not permit police reports and evidence. The counsel or the defendant presented it, at which time I objected, indicating that it is, in fact, against the rule and results in hearsay instead of evidence. Counsel, for the defendant, indicated, quote, Your Honor will recall the testimony of Officer Belenista. He was asked about a certain green car. And the only reason they want the police report in, evidence, is in order to indicate that there was no report or no statement taken from the driver of the green car at the scene of the crime when my client was robbed and shot by two robbers. At that time, the arbitrator stated that since this forum, this one exception, that he would allow it and he did. And that has brought about the conflict we're going through for the past decade. The accident happened in 97. The case was tried and completed in the early 2000. And as a result, the arbitrator's findings remain as the issue because the commission adopted them in total. And I filed a summons to the circuit court. And likewise, the judge in the circuit court indicated that the decision of the commission was not against the manifest weight of the evidence. And then I filed the appeal to this honorable court. Counsel, let me ask. It involves not only a question of fact. Counsel, does the police report contain statements where the claimant acknowledges that he went to obtain some marijuana? Is that the part of the report specifically you're complaining about? What is it in the report that you are complaining about? You're finding prejudicial. The arbitrator making his determination, approximately 21 findings. He actually took direct quotations consisting of 11 pages. And the wording could not possibly be any closer. Rather taking it from the testimony of whatever few officers that testified. Instead, he more or less formulated his findings directly from the police report. For example, of the 11 pages of the police report, the first page, the arbitrator finds officer Benvanista testified that the green vehicle, etc., etc. Directly from the police report. What is it that the green vehicle, why is that critical to this case? The defense claims that that's why they needed the police report. But that's not the case because they never clarified it. There was nothing except that after my client was shot in the back of the cab and he was attempting to maneuver the cab to some safe position because he had called on the radio to a dispatcher, a man named Scott, who never testified, and Scott advised him to stop the cab because it was going, it was free really for a short time. Counsel, did the claimant admit that he went to this location to obtain some marijuana? Did he admit to that? Pardon? Did the claimant admit he went to the location where he was robbed to obtain some marijuana? Is that what the claimant acknowledged? He denied all connection with all allegations as to narcotics. Was there any testimony in the record that he went there for that purpose, that he admitted to the officers other than the police report that you're talking about? Well, several officers, when they testified, it was obvious, when my client also rebutted it, that the police officer would simply make the statement in such a way that, of course, my client didn't deny it, but then he would badger him, and in the process of badgering him, it enters the police report as more or less an admission or even a confession, when in fact the police maneuvering in that manner in approximately a half a dozen different situations, when you put it all together, one wonders, why isn't there one written statement by my client given to a policeman, even if it wasn't signed? Well, what I'm trying to struggle with, what I'm struggling with is, assuming that there was some impropriety from an evidentiary standpoint about admitting the police report, if there's testimony from the officers themselves, and I understand that your client has challenged that, that he went there to obtain marijuana, doesn't that present a problem if he's there to obtain marijuana, which is not something where his injury arises out of his normal activities? How do you deal with that issue? In fact, I even checked his criminal record. He has no record in any kind of narcotics, and at the beginning, Officer Cheevee was with the paramedic, a female, which kept the policeman very honest, and although the police report indicates that there was more or less an admission or a confession, that's page one of the Defendant's Exhibit No. 7 police report, the fact remains that when Officer Cheevee testified, he admitted that at the scene when he interviewed my client, there was absolutely no comment, no conversation, no mention of any narcotics. Of course, the paramedic, a lady named Sangara, happened to be present, and I had her testify also, which kept the officer on the straight and narrow. However, at the Cook County Hospital, where my client was taken, a police officer, Jack Lowski, appeared, and that was quite a different situation. The entire procedure, police-wise, started again with the accusations to the point where finally, after three times insisting that my client was trying to purchase narcotics, after three times, finally, my client asked him, why do you keep insisting? Of course, he kept saying no. He doesn't get any written statement. The officer walks out, never to be seen again. I rebuttal, my client testified very clearly how that occurred, and I waited to see if Officer Jack Lowski was going to come back, but he never did, because there are 11 pages to that police report, defendant's number seven, and on every one, the arbitrator chose to make at least eight of the 21 findings direct from the police report. Consequently, by the time the case got to this point, you would think I was representing a real hophead, having been a prosecutor for eight years, I know how they are. This man has never been involved in narcotics. Cab drivers do everything, such as in the middle of the night, taking people, young people, girls, boys, to the loo, to parties, all over the place. Consequently, he doesn't claim to be so innocent as to other matters, but narcotics, he does use them, and out of about six, seven different officers, no one presented, not a confession, just a written statement that he denied or would not sign or whatever, not one. They don't do business that way, especially when one officer, a man named Garcia, who returned the cab that was involved to some suburban location of American taxi company, and maybe I'm a little too suspicious about that, but it seems that Officer Detective Garcia became the claims manager and his particular technique, terminology, and he testified, he never met my client. That was the funny thing about it, when he admitted, never was at the scene, never met my client. Absolutely nothing to do with anything. The reason is, he had his underlings, about half a dozen detectives, and three, four ordinary patrolmen, they were all involved, and the entire report indicates so, with different names. Counsel, your time is up. Your time is up. You'll have time on rebuttal. Counsel, please. Thank you, Your Honor. Counsel, we don't have a bailiff in this courtroom, but could you put that muffler back on there? Because when papers do get it, it appears that the court is going to have to do it. I'm trying to do that. Is that working? Yeah, that will help. Thank you. The police, the court.        Mr. Merritt. Mr. Merritt. Mr. Merritt. Mr. Merritt. Mr. Merritt. Mr. Merritt. Mr. Merritt.   Mr. Merritt. Mr. Merritttra.   10-2. 10-2. Mr. Merritttra, does he get both 15 or 15 minutes? I'll divide him.  Is it the same instance? Isn't it either a transfer or a transfer and the motion can proceed either in this case or that case? Well, he gets two minutes. My understanding is that he still gets to going to one of those services, more or less forces me to take us backwards in time, but that's all right. We would prefer a more chronological approach, but we can take it head on right where counsel put it. We did go through some pains in our brief, and, of course, when we argued the case in the circuit court and at the commission to remind those bodies that Respondent 7 was offered for a limited purpose and that the police reports were already in evidence at the time we made the offer. Respondents 2 and Petitioners 1. These are the underwriting Hartford claims file, which was subpoenaed by counsel, by Petitioner Mr. Goodman, and were placed into evidence. Among the records in both exhibits, Petitioners 1, Respondents 2 is the police report. They're already in evidence. When did the petitioner introduce them into evidence and for what purpose? At the hearing, if you'll excuse me, Your Honor, so I can get the reference. At the January 7, 2002 hearing before Arbitrator Williams, I cite page 20, but that would be page 20 of the industrial commission transcript. And then we – Why did he introduce it? Pardon? For what purpose? Why did he introduce it? What was the time? Why was it introduced? As I stand here, Your Honor, I cannot state that there was any specific offer made, other than this is the claims file and the underwriting file that it was placed into evidence. And I believe that was the same terms that our offer was made under as well. It was placed into evidence without objection by you? Both, I believe, were placed into evidence without objection. So your allegation is all these police reports went into evidence on motion of the petitioner first? They were. They were part of that exhibit, yes. But as far as 7 is concerned, as I mentioned, we – as this court knows, we submit proposed memoranda of decision. And our memorandum obviously didn't concentrate on Respondent 7, the police reports, because, again, these were, and I mentioned this in our brief, were an exclamation point. It was offered to show something similar to what we saw in the Hound of the Baskervilles, the dog that didn't bark in the night. Before we get too far into the Hound of the Baskervilles, let me see if we can bring this back. Well, I will. But let me ask some questions. Sure. This case is about whether the injury arose out of the employment, correct? That is, whether or not there was a causal connection between the injury, the shooting, and a risk is incidental to or connected with the cab driver's activities. Did Jagowski and Cheeby testify that the cab driver acknowledged or admitted he went to this location to purchase marijuana? Yes. Independent of this police report? Yes. So argument could be made that at the very worst it's cumulative, aside from the fact it may have been introduced by the other side anyway. Oh, that's correct, Your Honor. And also, there is the nurse's note in Cook County Hospital from the next morning around 10 a.m. where it's mentioned that he went to purchase marijuana. So there was no badgering involved there. That's in the record and that's in our appendix. So we had all officers testify, Cheeby, Jagowski. The only thing I heard your opponent arguing about was that he was prejudiced because these police reports were introduced into evidence. If they were introduced into evidence by the petitioner himself, it's waiver, and now it just boils down to, did the commission have the right to believe the policeman as opposed to the claimant? And I suppose that's their call on credibility. So what else is there to talk about? Well, I agree, Your Honor, but I just want to make the point that the Respondent's case, American Taxi's case, does not depend on Respondent 7, as I think you are asking me. Well, the policeman testified. They did. But Mr. Gaines points out, evidently, that the arbitrator chose to copy his findings directly out of the police reports themselves  Now, assume for a moment that that's true, and I haven't matched them up yet. But assume for a moment that's true. If it was the claimant that introduced the police reports into evidence, then we've got no error. Well, as far as 7 is concerned, though, I just would like to point out that Rule 236 does say, although police accident reports may otherwise be admissible into evidence, and again, we offer that 7 as an exception to the hearsay rule, merely to show that there was no statement made or taken from the driver of the green car. That was a limited offer. But his argument is that the arbitrator used it for a different purpose. He didn't use it for that purpose. He copied other things out of it. I understand what Your Honor is saying. And as far as matching up is concerned, you will see reference to Rx 7, Respondent 7. But it could have been Respondents 2 or Petitioners 1, or the officer's testimony. They all testified to this. That when I say all, I mean Cheeby and Joukowsky testified to this. Was 7 part of the group of police reports that were introduced by the Petitioner early on in the case? Yes, Your Honor. Is it the same report? It's the same set of documents, yes. Okay. So it's already in. I mean, I don't know why you had to introduce it again, but it's up to you. Well, again, if I had to do it again, obviously I would not have done it again. It was for an exclamation point. And even if 7 were disallowed, I think it's harmless error. We had the testimony of these gentlemen. And I would like to point out there is a host of evidence showing that the man did not go take a fare down to that part of town. He'd had a bad night. He drove to that section of town. Admittedly, according to the police testimony, testimony of the detectives, but there's also the testimony that he took three au pair girls down there who had taken the train out to Roselle but had been kicked off the train because the one day or one of two days of the year when you can't take alcohol on the train is St. Pat's Day. They were with another witness who testified that she was with these young girls. They had attended a party together, and they were all on the train out to Wooddale and Roselle, and the girls were dropped in Wooddale. She called a cab for them. The cab came. That was Mr. Goodman's cab. And she said that there was a sense of urgency. They were au pair girls. They had to be home at a certain time. It defies credulity to think that these girls would then go back down to Lexington and Holman, a girl from Romania, a girl from Ireland, and a girl from England. We can't speculate on that. I mean, you know, is it beyond the realm of possibility? I mean, you're arguing the reasonable inference is it would be, but the case doesn't turn on determining whether or not the au pair has really had to get home, does it? What it turns on is whether or not this is a personal deviation by the employee, and an errand is not connected with his work. Isn't that what it's about? Absolutely, but there is another issue, too, and that is whether or not he was our employee in the first place. The commission did not address that. Counselor, you've got five minutes. You didn't file a separate brief, did you? I'm sorry, Your Honor? You didn't file a separate brief. Yes, I did, Your Honor. Pardon me? I did file a separate brief. Yes, I don't have it. Please proceed. Your Honor, Mark Maratodi on behalf of Michael B. Sutton and MBS Taxi. I have it here. To the place of the Court, Mr. Gaines, Mr. Matranga, I'd like to be short. I have a separate issue, although I doubt the arguments of Mr. Matranga. My separate issues are Michael Sutton and MBS Taxi were never notified that a claim was pending against them, and MBS Taxi was never made a party to this matter until long after the three-year statute of limitations had run. We've asked the commission to recognize that. We've never received any response whatsoever. Mr. Sutton was not an employer. He owned cabs, which he leased. The petitioner leased the cab with an acquaintance or a friend of his. The acquaintance became injured. Mr. Goodman then leased the cab on his own. The cab was in his possession. He did what he wanted to do with it, when he wanted to do with it. At the times he chose, he took the rights he wanted, and he had no other context. It's a suburban license, isn't it? It's a suburban license. You can't pick up fare at Holman and Lexington. Picking up a fare in Chicago would be illegal. Did you ask the commission to make specific findings on these two issues? We did. We did not receive a response. The interesting issue about Mr. Sutton, although he was named in the original filing, his address was listed as the address of American Taxi Dispatch, even though Mr. Goodman always dealt with Mr. Sutton at Mr. Sutton's residence in Stringwood. So although Mr. Sutton was named, he was never served with any notice of these proceedings until he received a subpoena to testify as a witness some four years post-filing of the case. There is no direct law that I could find on that point, other than I think the essential due process of knowing there's a claim against you within a certain time frame. Are you saying we should remand this back to them to make these findings? No. I think there's a plethora of evidence that at no time was Mr. Goodman acting as anybody's, no relevant time, as anybody's employee at the time of this accident. If we don't accept Mr. Gaines's arguments, though, and affirm the commission on no recovery, then your argument becomes moot, does it not? It does. Yes. Okay. There's no point that you see for finding or for the proceedings to clarify the status of your client in this proceeding? If Mr. Gaines's arguments are rejected, there is no point to go further. If in some manner his arguments are accepted, then I point out again that at no time were any of the people I represent, the organizations I represent, notified of these proceedings within the three-year statute or before trial had already begun. Well, at minimum, it would be entitled to a ruling from the commission on the statute of limitations argument. That's correct. Now, I do want, in my remaining time, I just want to answer a question that was poised earlier. What's the importance of the green car? Because it always was a wonder to me, and I finally determined the importance of the green car as it contradicts the petitioner's testimony that he was in the street at the time he was shot. See, what he did was, after being shot, he backed his car up into the green car and then backed the green car into a fountain. So it was admitted substantively. It was. The fact, yes, by testimony, not just by the police report, but by testimony. Who testified? The police officers testified to the location of the green car, and Mr. Goodman testified that he backed his vehicle up and pushed the car away. And it's an indication in the impeachment of his testimony that he was in the road rather than parked by the curb. I'm very, very concerned about the question of whether that police report was part of the petitioner's exhibit that he introduced into evidence. The, as I understand it, the Hartford claim file was introduced into evidence in total. By the petitioner. By the petitioner. That was before I was involved in his claim. And that would be before Respondent 7 was ever introduced into evidence. I think petitioner's evidence or exhibits were admitted before Respondent's exhibits were admitted. Thank you, Counselor. Thank you, Your Honor. Rebuttal, please. Mr. Gaines? Yes. Did you introduce the Hartford claim file that contained all these police reports as a petitioner's exhibit? I'm sorry? Did you introduce a petitioner's exhibit, namely the Hartford claims file that contained all of these police reports? Did you introduce that exhibit? That I was? Did you introduce into evidence an exhibit, namely the Hartford claims file, that contained all of these police reports? Oh, no. You never did that? Record will not reflect that you introduced that? I never got a copy of the police report. I got my own several years later. Did you introduce the Hartford claim file into evidence? No. Both of these lawyers say you did. They say that you introduced an exhibit into evidence that was the Hartford claims file that contained all these police reports. You introduced these reports, according to them. No. You would acknowledge that if you did... I would know that, of course. If you did, you waived any objection, a hearsay objection. Isn't that not the case? If you introduced it? No, I didn't, because I wasn't able to... I was never given a copy when the arbitrator overruled me and received it in evidence. At that time, counsel for the defense, when I asked for one, said, Gaines already has one. Well, I really didn't have the police report as yet. Although I personally went all the way to the south side, Indiana, I think about 1,200 south at the police station, and got my own copy. And behold, I found it was 11 pages, and those are the ones that I have. Originally, I thought the police reports were five pages, then seven. And when I ended up getting all of them, it ended up being 11 pages. And they're in my brief, in the appendix, all 11 pages. Your exhibit list says that you introduced an exhibit, exhibits 1A through G, and G is listed as Hartford Insurance Company Workman's Compensation Claim File 545C33716. Did you introduce that file into evidence? If it was, it was the claims file, but not the police report. They say the police reports were in that claims file. All they had to do was hand me a copy. At the time, the arbitrator overruled me. Thank you, Counselor. He wasted the evidence against 236. Your time is up, Counselor. Your time is up. The court will take the matter under advisory for disposition.